Good morning. Nick Tutano for Appellant. May it please the Court. The only thing that I drove up here from San Diego to add to the pleadings that had been filed is that if the government continues to hold, even until today, that there was sufficient probable cause to arrest, I'm curious, if no drugs were found, would Kara have been convicted? I don't think so. If no drugs were found, I'm curious, would Kara have been charged by the U.S. Attorney's Office? With no drugs found, the government continues to say there was sufficient cause to arrest. I don't think Kara would have been arrested. I'm sorry, I don't understand what you mean by no drugs were found. If no drugs were found inside the Mustang. Would there have been? Would there have been a conviction? If there was probable cause to arrest. The question isn't whether there would have been a conviction. It's whether there would have been probable cause. Probable cause to arrest. Right. Probable cause to arrest means that you have the elements of the crime of. No, it doesn't. It means there's probable cause. That's not the elements of the crime. Well, if the same standard applies, probable cause to arrest to probable cause to search, you have to have the elements of the crime to arrest that person for. Let's flip the question. Let's assume that, let's take your hypothetical and assume that there were no drugs found. No, no, no charge was filed. Do you, do you have a 1983 action? I'm not sure. I don't think so. No, I think that there was good, strong, reasonable suspicion that Kara was, so says her, this Lee Howard, that she was arriving shortly with drugs, but Lee Howard wasn't even a co-defendant charged with Kara Hanline. There was no reliability to what supposedly he was saying to the confidential informant who had some reliability who wasn't there. I tried to argue in my brief that generally, and to the district court judge, generally these cases go down. An officer spending hours who has strong suspicion that a drug deal is going down oftentimes, and I think they wanted to do it in this case, stops the car and then have some unfolding either, oh, the client gave consent, or that something leads to some issues and circumstance. Keep in mind. But here didn't she say to the people in the house, oh, I've got drugs out in the car, I've got to go out and get my drugs, something of that nature? She didn't say one word. All the communication is occurring through Lee Howard, who's at a residence, who's talking to an informant, who thereafter is conveying to an officer at a different location something about it's soon to go down. So I'm just concerned because the government says there was probable cause to arrest. The officer who was in the field didn't think so. He knew that after hours of surveillance and communications back and forth, that there was a strong probability that whoever was going to arrive was going to interact. But after that point in time, you've seen it over and over again. Either there's a high sign, somebody sees drugs, either an officer sees drugs, either the reliable confidential informant tells a police officer, I just left the house, I just left the car, there's drugs, something to cement this probable cause to arrest. Here that there was not. The officer continued to use the fourth waiver of Lee Howard, who wasn't even in the vehicle at the time, to justify entry in the vehicle. Judge Moskowitz gave me a lot of leeway, and I felt comfortable in terms of exploring the credibility of even the police officers in this case. And I hope that after your review of the transcript, it is questionable, very questionable as to why and how they made entry into that vehicle. Cara Hanlein was not arrested by Agent Cox in that alley. He was he detained Cara Hanlein and says clearly under oath that he entered that vehicle to do a fourth waiver search of the passenger who was in the passenger seat. That is not an arrest. That is a detention of Cara Hanlein, presumably a detention, which they had a right to do, of Lee Howard, who had a fourth waiver. Keep in mind, my client did not, to do some exploratory searching, I guess. The residence was the focus of the surveillance and the investigation.  I don't think the officer had that because there's no evidence in the record. They didn't enter the house, so that doesn't matter. They did enter the house after the arrest. Right. After the finding of the narcotics. But that's just not relevant to the rest of the case, is it? Well, the reason I thought it was relevant was, is in the negative. The officer did not have the ability to enter that house, didn't have a search warrant, didn't have any exigent circumstances, and had no connection between Lee Howard and that house to enter based upon a fourth waiver, because it wasn't Lee Howard's residence. I'm really confused now. What does – is there anything that was found in the – I thought the challenge here was to the search of the car, not the search of the house. The challenge is to the search of the car. Okay. But they got into the car. The agents got into the car based upon the fourth waiver of Lee Howard, the passenger. They did not get into the car based upon the arrest of Cara Hanlein and then the search subsequent to the arrest. You're saying basically there wasn't an – either there wasn't an arrest or there wasn't grounds for an arrest. Correct. Because there was a detention. I don't care what the government calls it. There was a detention based upon reasonable, strong suspicion. There was not an arrest of Cara Hanlein. And if there was only a detention of Cara Hanlein, how does the government justify getting into the car? They don't. They're now saying that there was an arrest and there was probable cause. They're saying it now, but at the time it wasn't. The facts did not justify an arrest of Cara Hanlein. Well, that doesn't matter either. I mean, eventually we still have to get to where you started from, which is, is there a probable cause? Because if there was probable cause, I assume they're entitled to treat it as an arrest now if there was probable cause. Is that not true? Correct.  I'm saying to you throughout my briefs that there was not probable cause to arrest Cara Hanlein at the time. I have to submit it on that basis. I think we have your argument in hand. Do you want to save some time for Rebonna? Okay. Thank you. Good morning, Your Honors. Ann Perry on behalf of the United States. As we pointed out in our briefs, Your Honors, the United States has indicated and we so showed to Judge Moskowitz and the district court that there was ample probable cause to arrest and ample probable cause to search the vehicle. In reviewing the record in this case, there are two incidencies both involving the appellant Cara Hanlein. The first occurred in October of 2002, and those matters were testified to by Agent Don Hunter. The excerpts of record that are relevant for your considerations would be around 81, 83, 85. Those are Agent Hunter's words, and he was the individual who in October of 2002 was conducting a surveillance on an anticipated drug deal, and an individual showed up in a silver Mustang with Utah plates, later identified as the appellant Cara Hanlein. It was during that interaction with an informant of Agent Hunter's that Ms. Hanlein had indicated that she could be a source of supply for drugs, and it went no further than that at that time. But that was how Cara Hanlein first came to the attention of the authorities. Kind of disproving the theory that lightning doesn't strike twice, approximately a month later in November of 2002, there comes a series of events that brings forth the case before all of you. In this case, as it happens, Agent Hunter was in fact part of the same surveillance. This is the same Agent Hunter who had already looked up the fact to find out that the silver Ford Mustang with Utah plates was registered to Cara Hanlein. At that time, this surveillance was being monitored by Special Agent Barry Cock of the Drug Enforcement Administration, and they were looking at a gentleman by the name of Lee Howard, whose name has come up on several occasions. As indicated in our briefs and as indicated in the record before this Court and the extensive record that was developed by Judge Moskowitz, both Ms. Hanlein and Ms. Howard were in the silver Mustang at one point during that evening. The Court must take into consideration that this happened at 1130 at night. No one was anticipating that Cara Hanlein was going to show up. All they knew was that it was a female source of supply referred to as her. An informant had contacted Agent Cock, said that Lee and his source, she, would be on the way, and lo and behold, here comes the silver Mustang with Cara Hanlein in it. Mr. Howard did not have a drug deal with the informant that night. In fact, the record indicates, and has been presented to Your Honors, that Agent Cock told his informant, no, don't deal with him, tell him you're done. And then Mr. Howard and Ms. Hanlein were seen in the silver Mustang, and then we come to the wild driving that was quite documented in the record on appeal. The car being driven by Ms. Hanlein was, as they say, exiting the location or leaving the location, and a marked police unit came into view. The record is unclear that this marked police unit was actually part of any of the operation, but in any event, it came into view. Immediately upon the unit coming into view, the police car, the silver Mustang went flying around in the other direction, stopped, and both Ms. Hanlein and Mr. Howard bailed out of the car and went running, leaving the car abandoned. Now, it was the government's position. Kagan. So this is my question. If there was not going to be a transaction that night, what were they being arrested for? It could have been a conspiracy to commit conspiracy to distribute methamphetamine. Ms. Hanlein's construction that they really weren't doing an arrest, they were doing a stop, and they thought they were doing a precisely because they really, until they saw the drugs, didn't really have anything to arrest them for. What were they arresting them for? Well, at the time that they stopped the vehicle, or at the time that she was arrested, Your Honor, there had already been a countersurveillance driving by Ms. Hanlein. She had already been previously identified as a person involved in some sort of drug activity. Okay. But there was no drug transaction. Ordinarily, you have to arrest somebody for something. What was it? The information that had been communicated to the agents at the point of the arrest, Your Honors, was that Kara was arriving with a pound. And after the car was sent away. So it would basically be possession with intent to distribute, which, in fact, was charged in the complaint. But that's after they found drugs. The problem is if you don't, to get back to your opponent's point, if they don't find anything, there's no charge that could have been brought in this case successfully, do you think? That may very well be true, Your Honors, but, in fact, drugs were found. No, I understand. And they certainly had probable cause to look in that car after the two individuals went bailing out and running. But you're having trouble this morning, rightfully, to articulate the basis for the arrest at that point, absent the drugs. You didn't have a conspiracy, provable. Counter-surveillance and the CI evidence probably doesn't get you there. Your Honors, you need probable cause of something. What's the something? There was probable cause to, well, certainly there was probable cause to arrest her based on. For what? For conspiracy to distribute drugs based on the communications by Mr. Howard to the informant that his source of supply was coming, and that as soon as she drove up, she had already been identified as Kara Hanline, a person who had already a month earlier been involved in a drug deal. All there needs to be for probable cause is that there's been a drug deal. Has anybody ever identified what they were arresting her for? Were they arresting her for the earlier deal? I'm sorry, Your Honors? They weren't arresting her for the earlier deal, because the earlier deal, there was no evidence that she had actually been involved in that deal. There was only evidence that she would be potentially willing to be. That's correct. So they couldn't have been arresting her for that. No, they weren't. But that is part of the evidence that was in this case. Well, that would be support probable cause for why they would believe she would have done something if they had a something. The something, if we get closer to it, has to be then based on Howard's representation that she was going to arrive with what? With a pound. With a pound. And that's what he told the informant. He told the informant. Now, does it matter that he's not the informant? He is somebody else. For all anybody else. Does he have to be reliable in order to rely on that? I don't think so, Your Honor. And to follow your point. Suppose he was making it up because he wanted to get Kara Hanlon for some reason. Your Honor, suppose he was making it up. As it happens in the facts of this case, he wasn't. Well, I understand that. But we're looking at it from a, you know, a post-ante hoc point of view. I understand. And can the government rely, the informant was reliable, but when the informant is relying on somebody else, do we also have to have that person be reliable? The informant wasn't there and didn't see anything. That's correct. Is that unusual? Is that unusual in terms of a probable cause, a reliance on an informant? Usually the informant's there, not somewhere else. Not in this particular case, Your Honor. I understand not in this particular case. Well, and also because of the circumstances. Because once the silver Mustang showed up, Agent Hunter was there. You have the collective knowledge of the agents. He already knew that she had been involved in a previous drug transaction. Well, I understand that. But ultimately, as we, I mean, this is, as we pierce this case, there was only probable cause that there was a crime being committed at that point or a crime that she had been involved in to arrest her for if one believes Howard that she was arriving with a pound, right? That's true. All right. So the question is, so nothing else matters. The fact that, I mean, the rest of it matters as to whether there's, to support the probable cause. But if you don't believe that, there's no probable cause. So the question is, were they entitled, were the police entitled to believe that without some indice of a liability of Howard, not of the confidential informant? The only thing I can suggest in this particular case is, well, for purposes of a broader discussion, I guess, would be in Mr. Howard was already under investigation clearly for purposes of drug distribution. He was obviously known to the agents as being a drug distributor. And this was a case that was monitored throughout the evening, kind of step by step. She's on her way. She's got the pound. We're on our way. And everything that Mr. Howard seemed to be saying was certainly corroborated by the activities that took place during the questioning. Do you know the case law about this problem, about a confidential informant who was not himself there, who was relying on somebody else? I haven't submitted it to the Court in my briefs, no. And I don't know. And I would also suggest, however, to Your Honors, that one of the other concerns is, first of all, whether there was probable cause to arrest and then probable cause to search. And, of course, the probable cause to search hinged on a whole lot of different things. First of all, we brought to the Court's attention that the vehicle had been abandoned. Judge Moskowitz did not buy that argument. But, in fact, both individuals did flee the car. Second of all, there was a fourth waiver for the car. Kagan. Well, that we haven't been briefed here, and it seems to me to be out of the case. So the question is, but why is this a problem? If she was arrested and it was her car, then there's not an issue, is there? No. You're correct. So the only question is, but she has to have been arrested on probable cause. Right. And I think you take the history of her involvement with drugs, and since it only has to be a fair probability, according to the holdings of this circuit, it says, under the totality of the circumstances known to the arresting officers, all of them pursuant to the Del Viso case, there exists a fair probability that the appellant committed a crime. Fair probability. It's not beyond a reasonable doubt, as this Court already indicated in earlier conversations. And, Your Honor, a fair probability with taking in every stick of the evidence and this was an extensive record of a very long suppression hearing, you take every And there's more than a fair probability that she was involved in criminal activity that evening. But involved in criminal activity would support a reasonable suspicion to stop her. It doesn't have to be more specific than that. But my understanding for probable cause, you have a probable cause to arrest her for some specific crime. And that's where I'm getting stuck. Although I wasn't stuck, and I'm surprised about this, but I'm having some problem with it because I'm not quite clear. Or at least everything turns on being able to rely on Howard as to the specific as there being a specific crime. That, but also, Your Honor, there have been cases, and I cited one, and I can't remember if it's Rodriguez or Rodriguez that was cited in our brief, that talked about an arrest where no drugs were found in a particular case. But in this case, you have this individual constantly being identified. I'm sorry. The confidential informant had firsthand knowledge that she was going to be arriving with the pound. I mean, she had told him, I'm coming with the pound. That would be different. But we do have an interaction here. That's the issue. We have the intervention of Howard in the middle. However, his words are corroborated by her physical actions throughout, her being the driver. She showing up at the vehicle. The vehicle showing up at the location. Kagan. So essentially you're saying he became reliable during that evening when the things he was saying were borne out? Only to the extent that corroborated, that actual physical evidence that is completely unrelated to what he is saying bore out everything that he was saying, Your Honor. I mean, this isn't something that you're saying. No, I mean, that seems to me does have to be your argument, and maybe it works. It happened the way he said it would. Thank you, counsel. Thank you. Butler. Just to add, had Cora Hamline showed up and there were not drugs in the car, she would not have been charged with possession with the intent to distribute, because all there was is the conversation of Howard, who was not charged as the co-defendant, that added nothing to the elements of the charge or the crime that she supposedly was arrested for to begin with. So I had the same problem, and that's why I argued it the way I did to Your Honors. The facts unfolded in terms of the preceding facts. But if the confidential informant had himself, was the guy in the house instead of Howard, and he was the one who she called and said I'm on the way over, and he called the police and says she's called and said she's on the way over, then with a pound, I've ordered a pound, and she just called me and said she's on the way over with the pound, then what? They always stop the car on the freeway. I know. I'm not asking you that. I'm asking you whether, whatever they usually do. The car and the car with car, and it always comes to the parking lot, and there's an undercover officer or the informant, and they walk away with a high sign and the police come, because that's the reliable information that's being conveyed. Here, that doesn't exist. In all the other cases. I'm not sure I understand. I'm not really sure what they usually do. What I want to know is, could they have arrested her on that information without having the drugs in advance? I didn't hear the last two. Could they have arrested her on that information when the car pulled up without actually seeing the drugs? I say no. And that's what happened here. Well. What about the government's argument that, although it wasn't charged, there was sufficient probable cause to arrest her for conspiracy? I disagree. She talks to no one. She, assuming that there was no drugs in the car. Right. Okay. Who did she talk to? She didn't talk to the informant. She didn't supposedly talk to Howard. There's no proof of it. It's Howard and Howard sending a loan without any cooperation. And Howard. But, you see, this may be the difference between probable cause and beyond a reasonable doubt. She may have been – she might be able to be arrested for either conspiracy or possession just on the say-so of my fictional confidential informant who was actually in the room. I'm leaving out the intermediary step now. But probably no prosecutor would prosecute it. Why? Because he's not going to be able to prove it beyond a reasonable doubt. Those are different issues. And that's what I would tend to believe if she was talking to the actual confidential informant herself. But was there present probable cause that Cara Hanlein had drugs in that car at the time that she was arrested? The probable cause was that she had a deal with someone to come over and deal drugs of a specific amount, and she did come over when he said she was going to come over. And that might be a sufficient probable cause, although no prosecutor would then file the charges, which is a different issue. She didn't have a deal with anyone. Howard had this deal with the informant that excluded any facts related to Cara other than the fact that she showed up. Well, he said he had a deal with someone who was the female source who was going to be arriving at a certain time, and she did. That's all the government has. I don't feel that it's sufficient. Okay. Thank you, counsel. The case is here to be submitted. We'll proceed to the next case on the oral argument calendar, which is Sherman v. SEC, number 03-56601.
judges: Thomas, Berzon, Mahan